**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 20-82-DLB**

**DAVID DEWAYNE MORRIS**                                                 **PETITIONER**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**H. ALLEN BEARD, JR., Warden**                                        **RESPONDENT**

**\*\*\* \*\*\* \*\*\* \*\*\***

Federal inmate David Morris has filed a pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging disciplinary sanctions imposed against him by the Bureau of Prisons.  (Doc. # 1).  This matter is before the Court to conduct the initial screening of the Petition pursuant to 28 U.S.C. § 2243.  *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).

A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).  The Court evaluates Morris's Petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

On March 16, 2019, prison officials issued an Incident Report charging Morris with possession of narcotics.  In the Incident Report, Officer Gilliam stated that he searched the locker assigned to Morris and found a drink mix box.  Inside of the box there were nearly 300 postage stamps as well as three packets containing an orange film.  Thirty minutes later a prison nurse ascertained that the orange film was suboxone, a powerful narcotic pain killer like methadone.  Morris was charged with Prohibited Act Code 113, Possession of Narcotics or Drugs.  (Doc. # 1-1 at 12).

A Disciplinary Hearing Officer ("DHO") held a hearing on the charges on April 4, 2019.  During the hearing Morris asserted that Officer Wilson, not Officer Gilliam, had conducted the search.  In his written statement Officer Wilson indicated that he had searched the locker of Morris's cellmate, not Morris's locker.  However, because Gilliam was training as an officer, Wilson did advise Gilliam on how to complete the proper paperwork after Gilliam found an excessive number of stamps and what appeared to be narcotics in Morris's locker.  (*Id.* at 13, 1-2).  During the hearing Morris stated that he did not lock his locker unless he left his cell, which he rarely did.  The DHO noted, however, that Morris was in control over his locker and that it was a personal space unlike the common area of the cell.  (*Id.* at 2).

During the hearing Morris also alleged that Officer Wilson had planted the drugs in his locker.  Specifically, he stated that during the search he was removed from the cell, Officer Wilson then covered the cell window, five minutes later Officer Wilson emerged from the cell with a plastic bag containing stamps, and Officer Wilson then called Morris into his office and told him that suboxone was found in his locker.  The DHO found that Morris's allegations were not credible, noting that he "could not find any obvious evidence

or reason to believe they would fabricate their reports and you did not provide any which would lead me to believe they did.  They have no vested interest in you or anything to gain by fabricating their reports." (*Id.* at 2).  The DHO found that the evidence supported the conclusion that Morris possessed the drugs in question and found him guilty of the offense.  The DHO imposed various sanctions, including the disallowance of forty-one days of good conduct time.  The DHO Report was given to Morris on June 21, 2019. (*Id.* at 2-3).

Morris filed a timely appeal of the disciplinary sanctions to the Mid-Atlantic Regional Office ("MARO").  Morris contended that: (1) the DHO refused his request to review video of the search, (2) the DHO Report misidentifies the prison at which the search was conducted, (3) the nature of the drugs was required to be ascertained through use of a narcotics identification kit, (4) Office Wilson searched his locker, not Officer Gilliam, and (5) Officer Wilson removed him from the cell and planted the drugs in his locker.  MARO rejected Morris's appeal because Morris did not sign the form and his appeal contained too many additional pages. (*Id.* at 6).  Morris re-submitted his appeal and apparently corrected those errors, but MARO rejected his second appeal on August 7, 2019 because he failed to include a copy of the DHO Report. (*Id.* at 7).  Morris filed a third appeal, which MARO rejected as untimely. (*Id.* at 4-5, 8).  Morris sent MARO a note from his unit manager stating that Morris was given a copy of the DHO Report on August 12, 2019, but MARO again rejected the appeal as untimely. (*Id.* at 8, 9).  Morris then appealed to the BOP's Central Office, but apparently raised only his first two grounds for relief.  The Central Office stated that Morris's regional appeal was untimely and rejected his appeal. (*Id.* at 10, 11).

In his petition, Morris first complains that the BOP improperly rejected his appeals. He contends that his original appeal to MARO was timely, and that he complied with its directions to re-submit his appeal each time it identified a procedural error. (Doc. # 1 at 11-14). Morris is correct that his original appeal was timely. (*See* Doc. # 1-1 at 3, 6). It also appears that Morris actually or substantially complied with MARO's direction to re-submit his appeal on three occasions after each was rejected. (*See Id.* at 6, 7). The subsequent conclusion by MARO and the Central Office that his original appeal was untimely (*Id.* at 9, 11) is incorrect. *See* 28 C.F.R. § 542.15 (2005). It therefore appears that Morris adequately exhausted his administrative remedies as required by federal law.[1] *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 232 (6th Cir. 2006).

Morris next asserts that his due process rights were violated because the DHO did not review surveillance video of the search which, he alleges, would show that Officer Wilson conducted a sham search and planted the narcotics in his cell. Morris also complains that the substance found in his cell was determined to be suboxone by a nurse rather than through laboratory testing, which he suggests is required by BOP regulations. (Doc. # 1 at 14-18).

Before prison officials revoke or disallow sentence credits for good conduct in which the prisoner has a vested interest, due process requires that the inmate be given:

(1)     written notice of the charges against him at least 24 hours before the administrative hearing on the charges;

---

[1]     In his appeal to the Central Office, Morris complained only that the DHO did not review surveillance video and that the DHO Report referenced the wrong prison. (Doc. # 1-1 at 10). In his earlier appeals to MARO, Morris included his other claims, but there is no indication that he did so in his final appeal. If so, his other claims are unexhausted. Nonetheless, in light of its disposition of this matter, for purposes of discussion the Court will assume that Morris did in fact include the additional claims.

4

(2)    a hearing before an impartial decision-maker;

(3)    assistance from a competent inmate or staff member, if the inmate requests one and he will likely be unable to present a defense because he is illiterate or the case is too complex for him to comprehend;

(4)    the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

(5)    a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

*Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).  The Bureau of Prisons has included these and even broader protections by regulation.  *See* 28 C.F.R. §§ 541.5-541.8; BOP Program Statement 5270.09 (Nov. 2020).  However, an agency's failure to comply with its own regulations or policies does not violate due process.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause.").

Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record.  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).  Because the quantum of evidence required to meet that standard is minimal, the reviewing court need not re-examine the entire record, independently assess the credibility of witnesses, or weigh the evidence.  Instead, it need only consider whether "there is *any evidence* in the record that could support the conclusion reached by the disciplinary board."  *Id*. at 454-55 (emphasis added); *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013).

The disciplinary proceeding against Morris readily satisfied these standards.  First, the DHO considered Morris's allegations that Officer Wilson conducted the search rather than Officer Gilliam and that Wilson planted the drugs, but rejected both as not credible. (Doc. # 1-1 at 2).  That conclusion was supported by the written statements of both officers regarding their conduct and role in the search, which the DHO found to be more credible. This evidence satisfies the "some evidence" standard.

Further, the DHO was not constitutionally required to review video of the search, assuming it existed, to reach that conclusion:

> [A] prison surveillance videotape allegedly containing exculpatory footage need not be presented at a hearing or reviewed by a disciplinary hearing officer in order to satisfy the "some evidence" standard needed to uphold a disciplinary conviction.

*Flanigan v. Wilson*, No. 10-cv-111-GFVT, 2011 WL 5024432, at *6 (E.D. Ky. Oct. 20, 2011) (citing *Campbell v. Holt*, 432 F. App'x 49, 51 (3d Cir. 2011) ("[T]he existence of alleged videotape surveillance footage that might have been helpful to Campbell's defense does not nullify the conclusion that the DHO decision was supported by 'some evidence.'")); *see also Craig v. Matevousian*, No. 20-5155, 2020 WL 4516009, at *1 (6th Cir. July 17, 2020) ("Even if the video might have been helpful to Craig, the hearing officer's reliance on the written report does not nullify the fact that the hearing officer's decision was supported by some evidence."); *Redmond v. Holland*, No. 15-cv-30-DLB, 2015 WL 4167809, at *6 (E.D. Ky. July 9, 2015) ("[A] prisoner's claim that a DHO failed to view a video tape, or that he did not do so at the point in time requested by a prisoner, simply does not rise to the level of a due process violation."); *Davis v. Zuercher*, No. 08-CV-207-KKC, 2009 WL 585807, at *3 (E.D. Ky. Mar. 6, 2009) (collecting cases), *aff'd*, No. 09-5398 (6th Cir. Dec. 16, 2009); *Neal v. Casterline*, 129 F. App'x 113, 115 (5th Cir. 2005)

("[Petitioner] has not shown that the DHO's refusal to review the videotape denied him due process[.]").

Prison officials were not required to subject the packets found in Morris's cell to laboratory testing to identify the chemical compounds found in or on them.  Contrary to Morris's assertion, nothing in BOP Program Statement 6060.08 (2001) requires such testing.  By its terms that policy statement relates to random drug testing conducted through the collection of urine samples.  Further, Section 11 of the policy statement indicates only that a prison should maintain a supply of Narcotic Identification Kits to determine the identity of unknown substances; it does not indicate that such kits must be used for that purpose outside of testing randomly-drawn urine samples, let alone in every context.  In this case, the nurse's conclusion regarding the identity of the drug is sufficient to satisfy the minimal "some evidence" standard.  *Cf. Baltazar v. Barnhart*, No. 6: 19-cv-105-GFVT (E.D. Ky. July 6, 2015), *aff'd*, No. 19-6228 (6th Cir. Jun. 12, 2020) ("[T]here is no legal authority supporting Baltazar's argument that only independent laboratory testing provides a sufficient basis for a disciplinary conviction."); *Arce v. Sepanek*, No. 7:15-cv-09-ART (E.D. Ky. July 6, 2015) ("The DHO's evidence—the reports of two officers and a positive drug test—meets the low 'some evidence' burden."); *Cato v. Ives*, No. 12-cv-193-GFVT, 2013 WL 1856101, at *5 (E.D. Ky. Apr. 30, 2013) ("A prisoner also has no protected due process right in obtaining outside scientific or laboratory testing of evidence to be used against him.").  The DHO Report and the materials filed with the petition establish that Morris received all of the process which was due.  Accordingly,

**IT IS ORDERED** as follows:

(1)     Petitioner David Morris's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1) is **DENIED**; and

(2)     This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 17th day of December, 2020.

Signed By:

*David L. Bunning*

United States District Judge

J:\DATA\ORDERS\PSO Orders\0-20-82-DLB MOO.docx